UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

**Haim Wiezel,**
**Petitioner**

                      05 Civ. 967 (SCR)

      v.                MEMORANDUM DECISION
                            AND ORDER

**Batia Wiezel-Tyrnauer**
**Respondent**
───────────────────────────────

**Stephen C. Robinson, United States District Judge:**

This action presents the novel question of whether the Hague Convention, which grants district courts the authority to order the return of children who have been wrongfully removed from their country of habitual residence, also authorizes district courts to grant access or visitation rights to a parent who alleges that his custody rights have been violated, but who nevertheless does not seek the return of his children. For the reasons set forth below, we conclude that our jurisdiction does not extend to deciding the degree or contours of access rights and we therefore lack jurisdiction to order the relief requested in this case.

    **I.**    **Background**

        **A. Factual History**

Haim Wiezel (the "Petitioner" or "Father") is the natural father of four minor children—Bat-Sheva Wiezel, Alter Ya'acov Wiezel, Meir Yehoshua Wiezel and Gitel Wiezel (collectively referred to herein as the "Children"). The Petitioner currently resides in Israel. Batia Wiezel-Tyrnauer (the "Respondent" or "Mother"), who currently resides in the County of Rockland, New York, is the mother of the Children.

The Petitioner and Respondent were married on August 15, 1990 in Israel, where they resided throughout their marriage, which ended in divorce on October 17, 2000. The High Rabbinical Court in Jerusalem, which presided over the divorce proceeding, made no orders regarding the custody of the Children.

On October 25, 2000, one week after the divorce, the Father and Mother executed a Divorce Agreement ("Agreement"). The Agreement provided that "[t]he children shall be in the custody of the woman, and the husband shall be permitted to visit with the children once in two months, for the Sabbath." Petitioner contends, and Respondent does not appear to dispute, that the Agreement was not approved by an Israeli court, as required by Israeli law.

In June 2001, the Mother made a trip to the United States with the Children to visit relatives—a trip to which the Father claims to have given his consent only under the understanding that it would be temporary. Nevertheless, the Mother has remained with the Children in the United States, where she has since remarried.

Until the Children were brought to the United States, the Father claims to have had a close, custodial relationship with them, which included daily telephone calls, regular visits, financial support, and participation in decisions regarding residence, schooling and upbringing. Since the Mother's move to the United States, the Father has made multiple visits to the United States to visit the Children and claims that the Mother, who has since remarried, has on some occasions made it difficult for him to spend unsupervised time with the Children. The Father has attempted to negotiate with the Mother for the Children's return, or for at least occasional visits, to Israel, but contends that the Mother has refused to purchase air tickets for the Children to visit him in Israel. The parties' efforts to resolve their dispute by negotiation have proven fruitless.

### B. Procedural History

In November 2002, after Petitioner's efforts to negotiate the return of his children failed, the Petitioner filed an application for the return of the children pursuant to the International Child Abduction Remedies Act, 42 U.S.C. §11601, et seq. ("ICARA") and the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 ("Convention").[1] Petitioner filed his action with Israel's designated central authority for purposes of the Convention, which subsequently transmitted Petitioner's application to the United States State Department, which is the United States' central authority. The State Department assisted Petitioner in locating the children and obtaining pro-bono counsel to file a petition seeking the return of his children.

On January 28, 2005, the Petitioner filed a petition ("Petition") in this court pursuant to Article 12 of the Convention, which provides "Where a child has been wrongfully removed or retained…the judicial or administrative authority of the Contracting State where the child is…shall order the return of the child forthwith." Notably, even though Petitioner claims to be a custodial parent of the Children, the Petition does not seek the permanent return of the Children to Israel. Rather, Petitioner is seeking court-ordered visitation or access rights, specifically an order directing the Mother to arrange, at her expense, for the children to visit their Father in Israel twice per calendar year, and to allow the Father to have at least four unsupervised visits per year with the Children in the United States.

On February 9, 2005, the Respondent filed a motion to dismiss pursuant to Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Specifically, Respondent argues that this court has no subject matter jurisdiction because the Father's Petition seeks rights of access, rather than custody.

## II. Analysis

---

[1] The Convention went into effect in the United States on July 1, 1988, and went into effect between the United States and Israel on December 1, 1991.

### A. Background

Motions to dismiss pursuant to FED. R. CIV. P. 12(b)(1) are appropriate where the district court lacks jurisdiction over the subject matter of the dispute. When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. *See Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *See Sec. Investor Protection Corp. v. BDO Seidman*, LLP, 222 F.3d 63, 68 (2d Cir. 2000).

### B. Motion To Dismiss For Lack of Subject Matter Jurisdiction

Respondent argues that this court does not have jurisdiction over this dispute for two reasons: (1) because it is undisputed that Petitioner has no custody rights; and (2) because the petition does not seek the permanent return of the children to Israel. This court agrees that the Petition must be dismissed for the second, but not the first, of these two reasons.

#### i. Whether The Petition Must Be Dismissed Because Petitioner Had No Custody Rights At The Time The Mother Took The Children To The United States

In order to "preserve the status quo and to deter parents from crossing international boundaries" to secure a more favorable forum for the adjudication of custody rights, *Blondin v. Dubois*, 189 F.3d 240, 246 (2d Cir. 1999) (internal quotation marks omitted), the Convention provides for the return of children "wrongfully removed to or retained in any Contracting State." Convention, art. 1, 51 Fed. Reg. 10,498 (March 26, 1986). A removal or retention is to be considered "wrongful" where: a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention. Convention, art. 3. Thus an order of return is available as a remedy only for wrongful removals or retentions, and removals or retentions are wrongful only if they are "in breach of rights of custody." *See id.*

In this case, Petitioner directly alleges that he "has a right of custody of the children within the meaning of Articles Three and Five of the Convention" and that "at the time of the wrongful retention of the Children was actually exercising custody" within the meaning of those Articles. In response to Petitioner's claim to have had custody rights over the Children, Respondent points to the Agreement by the Father and Mother, which was apparently made before a Rabbinical Court on October 25, 2000, one week after their divorce. As mentioned above, the Agreement clearly sets forth that the children "shall be in custody of the [Mother], and the [Father] shall be permitted to visit with the children once in two months, for the Sabbath."

Although the language of the Agreement clearly indicates that Petitioner had no rights of custody, it cannot, for several reasons, provide the basis for dismissing the case for lack of subject matter jurisdiction. The copies of the Agreement submitted by Respondent lack written signatures by the parties, and "[c]ourts have declined to consider unsigned documents in ruling on motions to dismiss." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 n.5 (2d Cir. 2002) (citing cases). Moreover, Petitioner has placed the validity of the Agreement in dispute by contending that it has no legal effect because it was not approved by an Israeli court, as required by Israeli law and, as a result, by the Convention.[2] *See* Convention art. 3, 51 Fed. Reg. 10,498 ("The rights of custody…may arise…by reason of an agreement having legal effect under the law of that State.").[3]

For these reasons, the Agreement cannot form the basis for dismissal for lack of subject matter jurisdiction. The court must accept, for purposes of this motion, Petitioner's claim to have had custody rights over the Children.

### ii. Whether The Petition Must Be Dismissed Because The Petition Does Not Seek The Permanent Return Of The Children To Israel

Even if Petitioner has custody rights, Respondent insists that this court has no jurisdiction to adjudicate a petition, like the Father's, that seeks only rights of access, such as periodic visitations.[4] Respondent cites a Second Circuit case, *Croll v. Croll*, 229 F.3d 133 (2d Cir. 2000), for the proposition that district courts lack subject matter jurisdiction to provide or enforce 'rights of access' of the kind that Petitioner is seeking. Respondent's argument, however, misconstrues *Croll*, which confirms merely that district courts have jurisdiction to order the return of children only to a parent who has custody rights, and holds that rights of access do not constitute rights of custody within the meaning of the Hague Convention, even when coupled with a ne exeat clause that entitles a non-custodial parent the right to prevent the custodial parent from taking the child to a new country of residence. *See Croll*, 229 F.3d at 143. In this case, the Petitioner claims to have custody rights, but is seeking only visitation rights.

While *Croll* is not directly on point, Respondent also cites *Yi Ly v. Heu*, a District of Minnesota case, for the proposition that federal jurisdiction over proceedings under the

---

[2] In its reply papers, Respondent does not appear to dispute that the Agreement was not approved by an Israeli court.

[3] In addition, it is also important to note that this court could not consider this document in resolving the motion to dismiss because there is no indication that Petitioner relied on the Agreement in drafting his petition. *See Chambers*, 282 F.3d at 153 ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."). Absent this Agreement, the court is left with the Petition, which clearly alleges that Petitioner had custody rights, and therefore precludes dismissal. In order for the court to consider the Agreement, it would have to convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56. *See id*. at 154.

[4] The Convention defines rights of custody as "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Convention. art. 5. Rights of custody are distinguished from rights of access, which are defined in the Convention as "the right to take a child for a limited period of time to a place other than the child's habitual residence." *Id*. Petitioner is indisputably seeking only the latter.

Hague Convention does not include the power to issue orders to secure access rights. 296 F. Supp. 2d 1009, 1010 (D. Minn. 2003). In *Yi Ly*, the court held that, although petitioner had proved that respondent wrongfully removed the child from France, which necessarily implies that petitioner had custody rights, the court refused to order the child's return because the respondent had demonstrated that the child was settled in her new environment in the United States, one of the exceptions to the return remedy. *Id*. In light of that holding, the Petitioner moved to alter the court's judgment to order that petitioner be allowed to visit with the child via phone, letters, and visits as well as other parental access that is normal for the non-custodial parent. *Id.*

In response, the *Yi Ly* court concluded that, although "[f]ew federal courts have had occasion to examine the question whether federal jurisdiction over proceedings under the Hague Convention includes power to issue orders to secure access rights…, [t]he consensus among those that have considered the issue is that such jurisdiction does not exist." *Id*. citing *Wiggill v. Janicki*, 262 F. Supp. 2d 687 (S.D. W. Va. 2003); *Fernandez v. Yeager*, 121 F. Supp. 2d 1118 (W.D. Mich. 2000); *Bromley v. Bromley*, 30 F. Supp. 2d 857 (E.D. Pa. 1998).

Admittedly, however, the cases cited in *Yi Ly* are distinguishable from the facts of this case, which arguably weakens its precedential value here. In *Wiggill*, unlike in this case, the petitioning mother conceded that the respondent father had sole custody and requested only that the father pay costs of visitation; moreover, the petition in that case was premised on Article 21—not Article 12—of the Convention. *See* 262 F. Supp. 2d at 689. Similarly, in *Fernandez*, the court concluded that it had no jurisdiction to enforce rights of access after determining that the petitioner had no custody rights. *See* 121 F. Supp. 2d at 1125. And in *Bromley*, it was again undisputed that Petitioner had no custody rights, and the question was whether the Petitioner could seek judicial enforcement of access rights under Article 21. *See* 30 F. Supp.2d at 860. In this case, in contrast, Petitioner is seeking relief under Article 12, and, as mentioned, has alleged that he had, and was exercising, custody rights when the Mother moved the Children to the United States.

The jurisdictional issue here, therefore, is whether this court has jurisdiction over an Article 12 claim by a petitioning parent who claims to have custody rights but is seeking as, a remedy, only visitation and other access rights. Petitioner, in short, is seeking to have this court enforce his custody rights by ordering visitation rights. In resolving this question, the court finds that the Petitioner's request for visitation rights, rather than return of the Children, precludes this court from asserting subject matter jurisdiction over this case.

Crucially, Article 12 compels the court to order a single remedy—return of the child—upon a finding of a wrongful removal. Specifically, Article 12 provides "Where a child has been wrongfully removed or retained…the judicial or administrative authority of the Contracting State where the child is…*shall* order the return of the child forthwith." (emphasis added). The use of the word 'shall' in Article 12 leaves this or any court no choice but to order return upon finding a wrongful removal, and does not leave the court any discretion to grant any other remedy. The Convention, therefore, does not permit this court to order the relief that Petitioner is seeking.

Moreover, the Convention sets forth separate procedures by which signatory nations may enforce access rights of petitioning parents, and those procedures do not

involve the federal courts.  Specifically, while Article 12 addresses procedures to effectuate the return of a wrongfully removed child, Article 21 concerns "organizing or securing the effective exercise of rights of access" to a child.  Although Article 12 specifically refers to action by the "judicial or administrative authority" of a member nation, Article 21 makes no mention of recourse to a judicial authority.  *See* Convention art. 21.  Instead, a parent must apply to the "Central Authority" of a nation to secure enforcement of his or her rights of access, *see id.*, and the "central authority" for the United States is the Department of State.  *See* EXEC. ORDER NO. 12,648, 53 Fed. Reg. 30,637 (Aug. 11, 1988).

Admittedly, there is language in *Croll* that could be construed as indicating that some American courts also have jurisdiction to enforce access rights.  Specifically, the court in *Croll* did mention that, "[t]o vindicate the breach of access rights, the Convention authorizes signatory nations to use one or more remedies (short of return) to "promote the peaceful enjoyment of access rights," and to "take steps to remove, as far as possible, all obstacles to the exercise of such rights."  229 F.3d 137-38.  Further, the court explained that "[o]ne such remedy is a writ ordering the custodial parent who has removed the child from the habitual residence to permit, and to pay for, periodic visitation by the non-custodial parent with access rights."  *Id*. at 138 citing Convention art. 26, 51 Fed. Reg. at 10,500; *Viragh v. Foldes*, 612 N.E.2d 241, 246-50 (Mass. 1993).

But nothing in this language indicates that *this* court has jurisdiction to order the kind of relief that Petitioner is seeking.  First, the only case cited by the Second Circuit is a state court case and state courts are the preferred forum for resolving access issues.  *See Fernandez*, 121 F. Supp. 2d at 1126 (matters relating to access are best left to the state courts, which are more experienced in resolving these issues); *Bromley*, 30 F. Supp. 2d at 862 ("[T]he arena of child custody matters, except for the limited matters of international abduction expressly addressed by the Convention, would better be handled by the state courts which are more numerous and have both the experience and resources to deal with this special area of the law.").

More fundamentally, *Croll* indicated, at most, that courts could issue a writ ordering the custodial parent to pay for periodic visitation by the "*non-custodial* parent *with* access rights."  229 F.3d at 138 (emphasis added).  This case has been brought by a parent who claims to have custody rights and who has affirmatively argued that the only agreement that could possibly be construed as entitling him to rights of access that this court could enforce has no legal effect because it is invalid under Israeli law.  Language indicating that state courts may have jurisdiction to enforce access rights that have already been created does nothing to suggest that federal courts have jurisdiction to *create* access rights that they deem to be appropriate and in the best interests of children.  *See Wiggill*, 262 F. Supp. 2d at 690 ("While federal courts undoubtedly have jurisdiction under the Convention and ICARA to act where children have been wrongfully removed from their country of habitual residence, that jurisdiction does not extend to *access issues* and alleged breaches of access rights.") (emphasis added).

For these reasons, this court finds that it lacks jurisdiction to issue orders to create and secure access rights.  Lacking the authority to order the relief requested, the court finds that this action must be dismissed.

III.  **Conclusion**

For the foregoing reasons, Respondent's motion to dismiss is GRANTED without prejudice.
The clerk of the court is directed to CLOSE this case.
It is so ordered.

Dated: White Plains, New York
April 27, 2005

Stephen C. Robinson, U.S.D.J